**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3397-14T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

KELVIN REYES, a/k/a KEVIN REYES,

    Defendant-Appellant.

_____

Submitted November 29, 2016 — Decided June 19, 2017

Before Judges Ostrer and Leone.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 13-06-1904.

Joseph E. Krakora, Public Defender, attorney for appellant (Peter T. Blum, Assistant Deputy Public Defender, of counsel and on the brief).

Mary Eva Colalillo, Camden County Prosecutor, attorney for respondent (Jason Magid, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

    Defendant Kelvin Reyes pleaded guilty to first-degree possession of a controlled dangerous substance (over fifty marijuana plants) with the intent to distribute, N.J.S.A. 2C:35-

5(a)(1), -5(b)(10), after the trial court denied his motion to suppress evidence. Consistent with the plea agreement, the court sentenced defendant to a ten-year term of incarceration with a three-year period of parole ineligibility. In his appeal, defendant asserts the trial court erred by relying on the hearsay statement of the officer who first observed the so-called "grow facility" in the basement of defendant's Camden home. In doing so, defendant argues the court both violated his constitutional rights and abused its discretion. Finding no such error, we affirm.

The principal State witness at the suppression hearing was parole officer Anthony Bruno. He had a warrant to arrest a parole absconder named Joel Hernandez, who was defendant's cousin. Bruno's investigation into Hernandez's whereabouts led him and a team of officers to defendant's house. Bruno, lacking a search warrant, requested defendant's permission to enter the home to search for the fugitive. Bruno testified that Reyes consented to the officers' entry. Bruno also testified that the house reeked of burnt marijuana. Reyes admitted he had recently smoked marijuana, but Bruno assured Reyes that his purpose was to find the fugitive.

Defendant raised no objection initially as the officers searched the first and second floors of his home. But, when a

member of the search team, Sergeant Dave Brooks, opened the door to defendant's basement, he suddenly withdrew his consent to the search and insisted that Bruno would need a search warrant to proceed downstairs. Brooks promptly shut the basement door. But, Bruno testified, without objection, that Brooks then said he had already observed the basement contained a marijuana grow facility. Brooks then told Bruno about his observation. Although defendant had withdrawn his consent, the officers thereafter conducted a protective sweep of the basement to confirm that neither Hernandez nor anyone else was hiding there. The officers eventually obtained a search warrant for the basement and seized 307 plants.

Defendant presented a competing version of events through two witnesses — a cousin and a close friend — who were present in the house when the officers arrived. Both testified that the officers initially entered the house without consent. The friend, who was familiar with the configuration of the basement stairs, further asserted it would have been impossible to see into the basement from Brooks's vantage point at the threshold of the door. The friend explained that the door led to a landing with the stairway positioned at a ninety-degree angle to the left.[1] He argued that

---

[1] Defendant introduced into evidence several photographs of the doorway and stairway, but these are not included in the appellate record.

a wall abutting the far side of the steps precluded any view into the basement until one walked at least halfway down.

Defendant also called a State Police Detective Sergeant, Dean Carnival, to testify about the protective search and subsequent search pursuant to the warrant. Significantly, on cross-examination, Carnival testified that the lighting in the basement was unusually bright, noting the lights mimicked sunlight to promote the plants' growth. He also stated that he could smell the marijuana plants from the top of the basement.

In denying the motion to suppress, the trial judge credited Bruno's testimony and relied on Brooks's hearsay statement that he detected the presence of marijuana plants before defendant withdrew his consent. The judge found that the officers discovered the marijuana plants pursuant to defendant's consent. Accordingly, the seizure was lawful.

As his sole point on appeal, defendant contends:

POINT I

THE HEARING COURT DEPRIVED REYES OF DUE PROCESS -- OR AT LEAST ABUSED ITS DISCRETION -- BY CREDITING AN OFFICER'S HEARSAY TESTIMONY THAT ANOTHER OFFICER HAD SEEN MARIJUANA IN REYES'S BASEMENT OVER AN EYEWITNESS'S TESTIMONY THAT THE BASEMENT COULD NOT BE VIEWED FROM THE OTHER OFFICER'S POSITION. U.S. CONST. AMENDS. XIV; N.J. CONST. ART. I, PARA. 1. (not raised below).

Defendant argues that his procedural due process rights were violated by the court's reliance on Brooks's hearsay observation. In particular, he contends Brooks's out-of-court statements were unreliable and should have been supplemented by his in-court testimony. He argues the court abused its discretion by failing to require the State to call Brooks.

We find no merit in defendant's challenge to the court's reliance on Brooks's hearsay observation. Defendant did not object at the hearing to the admission of Brooks's hearsay statements through Bruno. Indeed, on cross-examination of Bruno, his counsel had Bruno repeat the hearsay evidence about which he now complains:

> Q    So, Mr. Brooks says to you, you know what's down there in the basement, there's a bunch of marijuana plants; is that right?
>
> A    Correct, uh-huh.

Even if hearsay is subject to a well-founded objection, it is generally evidential if no objection is made. State v. Ingenito, 87 N.J. 204, 224 n.1 (1981) (Schreiber, J., concurring); see also Morris v. United States, 813 F.2d 343, 348 (11th Cir. 1987) (stating that "if [hearsay] evidence . . . is admitted without objection, it is to be considered, and accorded its natural probative effect, as if it were in law admissible" (emphasis omitted) (quoting Spiller v. Atchison, Topeka & Sante Fe Ry. Co., 253 U.S. 117, 130, 40 S. Ct. 466, 472, 64 L. Ed. 810, 819 (1920))).

Our Court has declared that the admission of hearsay without objection is subject to a plain error review, but it did so in a criminal jury trial. State v. Frisby, 174 N.J. 583, 591 (2002) ("Because no objection was advanced with respect to that hearsay evidence at trial, it must be judged under the plain-error standard: that is, whether its admission 'is of such a nature as to have been clearly capable of producing an unjust result.'" (quoting R. 2:10-2)). It is questionable whether plain error review is required in a suppression hearing where the judge is the fact-finder and permits the admission of unobjected-to hearsay. The judge presumably appreciates the nature of the hearsay and will give it the weight it deserves. Cf. N.J. Div. of Child Prot. & Permanency v. J.D., 447 N.J. Super. 337, 348-49 (App. Div. 2016) (stating, in context of civil bench trial, "[w]hen objectionable hearsay is admitted . . . without objection, we presume that the fact-finder appreciates the potential weakness of such proofs, and takes that into account in weighing the evidence"). "In general, it is not the judge's responsibility, particularly in a bench trial with represented parties, to intervene with a well-founded hearsay objection, whenever counsel choose not to raise one of their own." Id. at 349.

Even if the plain error standard does apply, we presume the hurdle is high to show the prospect of an unjust result. Cf.

Ibid. (noting the "high hurdle" to demonstrate plain error where unobjected hearsay is admitted in a civil bench trial). For two reasons, we discern no plain error in the court's reliance on Brooks's observation. First, defendant places undue weight on the evidence that Brooks could not actually see plants from his vantage point at the basement door because of the configuration of the stairway. Second, defendant has not established that reliance on hearsay was a "clear and obvious" error. See State v. Morton, 155 N.J. 383, 421 (1998) ("Under that [plain error] standard, defendant has the burden of proving that the error was clear and obvious and that it affected his substantial rights."), cert. denied, 532 U.S. 931, 121 S. Ct. 1380, 149 L. Ed. 2d 306 (2001).

Turning first to the evidence of what Brooks could or could not see, we defer to the trial court's determination that defendant's friend was not credible. State v. Scriven, 226 N.J. 20, 32 (2016). We also note that defendant has not included the photographs that he claims demonstrate the sight lines from the doorway in the appellate record. See Cmty. Hosp. Grp., Inc. v. Blume Goldfaden, 381 N.J. Super. 119, 127 (App. Div. 2005) (stating that the court need not attempt to review an issue "when the relevant portions of the record are not included"), certif. denied and remanded on other grounds, 187 N.J. 489 (2006); see also R. 2:6-1(a) (stating appellant must include in the appendix "such

other parts of the record . . . as are essential to the proper consideration of the issues").

Furthermore, even if one assumed that Brooks could not actually see the plants in the basement, the evidence amply demonstrated that Brooks could nonetheless reliably detect the presence of a grow facility. Notably, although Bruno testified that Brooks "had . . . seen down the stairs" and conveyed that there were plants in the basement, Bruno did not claim that Brooks said he actually saw the plants from the doorway. The following colloquy is illustrative:

> A    I see -- as Mr. -- Sergeant Brooks opened the door, you know, he kind of -- and then he revoked consent, he shut the door. And as he was shutting the door he was kind of looking at me with a facial expression that we have some sort of issue.
>
> Q    Okay. Did he say anything aloud at that point in time? And I mean --
>
> A    Yes.
>
> Q    -- Sergeant Brooks when I say he?
>
> A    Yes.
>
> Q    What did he say?
>
> A    I can't recall the specifics, but something to me regarding something going on in the basement.
>
> Q    Okay. And did he elaborate on that?
>
> A    I don't recall, sir.

. . . .

Q　. . . . Did Sergeant Brooks relate to you at any point between the door opening, the contacting the Marijuana Eradication Unit, did he tell you what he was able to observe from the doorway?

A　Yes. Yes.

Q　And what did he tell you?

A　That there was a lot of marijuana in the basement.

Q　Okay. And that was based on the observation that he had made at the top of the stairs?

A　Yes.

Bruno's testimony demonstrates that Brooks's observation of a marijuana grow facility could well have been based on the glow of the bright lights that illuminated the basement to mimic sunlight and on the detectable odor of 307 marijuana plants in the basement of a Camden house. In short, Brooks did not need to see the plants to conclude a grow facility was present in the basement. Thus, we reject defendant's contention that Brooks's hearsay statement was unreliable.

Second, defendant has fallen far short of demonstrating that it was a clear and obvious error of law for the court to rely on Brooks's hearsay. See Morton, supra, 155 N.J. at 421. An error is plain only if "the error is clear under current law." United

States v. Olano, 507 U.S. 725, 734, 113 S. Ct. 1770, 1777, 123 L. Ed. 2d 508, 519 (1993). However, the clear import of current law is that "hearsay is permissible in suppression hearings." State v. Bivins, 226 N.J. 1, 14 (2016) (internal quotation marks and citation omitted); see also State v. Wright, 431 N.J. Super. 558, 565 n.3 (App. Div. 2013) (citing N.J.R.E. 101(a)(2)(E)), rev'd on other grounds, 221 N.J. 456 (2015); State v. Gibson, 429 N.J. Super. 456, 466 (App. Div. 2013) (stating that "[t]he Rules of Evidence do not apply in the suppression hearing, except as to N.J.R.E. 403 and claims of privilege" and citing N.J.R.E. 104(a)), rev'd on other grounds, 219 N.J. 227 (2014); State v. Williams, 404 N.J. Super. 147, 171 (App. Div. 2008) (concluding that the defendant could not invoke his Sixth Amendment right to challenge the admission of hearsay during a suppression hearing because the right was "inapplicable" to the proceeding), certif. denied, 201 N.J. 440 (2010).[2] There is also no clear authority for defendant's contention that hearsay in a suppression hearing requires special corroboration.

---

[2] New Jersey is not alone. "The overwhelming majority of state courts that have addressed the question of whether Crawford [v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)] applies to a preliminary hearing such as a motion to suppress have also held that the right of confrontation is not implicated." Washington v. Fortun-Cebada, 241 P.3d 800, 807 (Wash. Ct. App. 2010) (collecting cases, including Williams, supra).

Contrary to current law approving reliance on hearsay, defendant asks us to find a bar to the admission of hearsay in suppression hearings grounded in the right to procedural due process. Defendant cites no precedent, let alone clear precedent, in support of his argument. The United States Supreme Court supports the opposite view. United States v. Raddatz, 447 U.S. 667, 679, 100 S. Ct. 2406, 2414, 65 L. Ed. 2d 424, 435 (1980) (observing that "the process due at a suppression hearing may be less demanding and elaborate than the protections accorded the defendant at the trial itself"). Defendant's reliance on cases involving parole and probation revocation and civil commitment — to the extent they stand for a limitation on hearsay at all — are readily distinguishable because they directly involve the liberty of a defendant.[3]

In sum, the court's admission of Brooks's hearsay through Bruno was not plain error. To the extent not addressed,

---

[3] We recognize that a majority of the panel in State v. Bacome, 440 N.J. Super. 228, 239 n.7 (App. Div. 2015), rev'd on other grounds, 228 N.J. 94 (2017), raised questions about the observation in Raddatz that "the interests at stake in a suppression hearing are of a lesser magnitude than those in the criminal trial itself." Raddatz, supra, 447 U.S. at 679, 100 S. Ct. at 2414, 65 L. Ed. 2d at 435. But the judges did not reach the issue of hearsay's admissibility in a suppression hearing. We need not join that debate further here, as the issue in a plain error analysis, as we have noted, is whether an error was clear under current law.

defendant's remaining arguments lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION