# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3437-17T3

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

T.W., J.K., JR., and D.H.,

     Defendants-Respondents.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF J.W.,
T.G., and D.H.,

     Minors-Appellants.

_____

Argued August 5, 2019 – Decided August 16, 2019

Before Judges Sabatino, Rose and Mitterhoff.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FG-16-0033-17.

Olivia Belfatto Crisp, Assistant Deputy Public Defender, argued the cause for appellants (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Olivia Belfatto Crisp, on the briefs).

Ted G. Mitchell, Deputy Public Defender, argued the cause for respondent T.W. (Joseph E. Krakora, Public Defender, attorney; Ted G. Mitchell, on the brief).

Mary Kathleen Potter, Designated Counsel, argued the cause for respondent J.K., Jr. (Joseph E. Krakora, Public Defender, attorney; Mary Kathleen Potter, on the brief).

John Andrew Albright, Designated Counsel, argued the cause for respondent D.H. (Joseph E. Krakora, Public Defender, attorney; Robyn A. Veasey, Deputy Public Defender, of counsel; John Andrew Albright, on the brief).

Christian Arthur Arnold, Assistant Attorney General, argued the cause for respondent Division of Child Protection and Permanency (Gurbir S. Grewal, Attorney General, attorney; Jason Wade Rockwell, Assistant Attorney General, of counsel; Christian Arthur Arnold, on the brief).

PER CURIAM

In this Title 30 action, the Law Guardian for three minor children appeals the Family Part's March 14, 2018 order denying termination of the parental rights of the children's mother and their respective fathers. The order followed a two-day trial at which the Division of Child Protection and Permanency ("the Division") presented testimony from two witnesses, both of whom the trial judge

2

A-3437-17T3

found in various respects to lack credibility. Defendant parents and the Law Guardian proffered no witnesses. Based on the proofs the Division chose to present at trial, the judge concluded the four prongs of N.J.S.A. 30:14C-15.1(a), which are required for termination, had not been proven by the necessary level of clear and convincing evidence.

On appeal, the Law Guardian argues the trial court misconstrued the record and misapplied the law in several respects. She urges that we reverse the final judgment and permanently sever these parents from their children. Although it did not file a notice of appeal, the Division joins in the Law Guardian's position.

Applying the heightened deference owed to the trial court in cases of termination denials, we affirm that court's decision.

## I.

We need not set forth here comprehensively the facts and procedural history, as we presume the parties' familiarity with those details. The following brief summary will suffice.

A-3437-17T3

The Parties and The Subject Children

The defendant mother, T.W., was born in June 1992.[1] Each of her four children has a different father. The oldest child, A.G., was born in September 2008. A.G. and her father ceased to be involved in this case before the trial, and they are not the subject of the final judgment or this appeal. Hence, the case concerns only the three other children.

The next oldest child, T.G., was born in December 2009. While the parental rights of T.W. as the mother of T.G. are part of this case and this appeal, those of T.G.'s father, K.M., are not. That is because K.M. voluntarily surrendered his rights before trial to J.M., who is K.M.'s mother and T.G.'s paternal grandmother. J.M. had already been serving as T.G.'s caregiver and intended to adopt him.

T.W.'s third child, J.W., was born in October 2013. J.W.'s father is J.K., a co-defendant at trial and a co-respondent on appeal.

---

[1] We use initials to protect the privacy of the children and the confidentiality of the Division's records. R. 1:38-3(d)(12). For clarity, we at times refer to T.W. as "the mother."

The youngest child, D.W.,[2] was born in February 2016. His father, D.H., was likewise a co-defendant at trial and is a co-respondent in this appeal.

The Division's Initial Involvement with the Family

The Division first became involved with the children in February 2013, when it removed A.G. and T.G. from the care of T.W., who was then living in the home of her own mother. The residence at the time lacked heat and hot water, although the children appeared healthy and appropriately dressed for the season. T.W. tested positive for marijuana, and admitted to using marijuana twice a day, three to four times per week. She was ordered to and received intensive outpatient treatment.

In the meantime, A.G. and T.G. were removed and placed in resource homes, where the mother had frequent visitation with them. The mother continued to receive treatment, although at times she generated positive urine screens for marijuana. The mother also submitted to several mental health evaluations. Among other things, the evaluations revealed that she suffered from depression and other mental health and cognitive issues. She was recommended for antidepressant medication.

---

[2] At times the record also refers to this youngest child using the surname "H." To avoid confusion, we will refer to him as "D.W." rather than "D.H.," to distinguish him from his father.

<u>J.W.'s Birth in October 2013</u>

In October 2013, the mother gave birth to J.W., her third child. The Division was given care and supervision of J.W., but T.W. retained legal and physical custody. J.W.'s father, J.K., was incarcerated at the time but expected to be released soon. The mother continued to have supervised visitation with her two older children, which went favorably. She attended a full-time school program on her own accord and obtained a GED degree.

<u>Reunification of the Children with T.W. in May 2014</u>

In May 2014, A.G. and T.G. were reunited with T.W., who was then living with her own mother. The family pursued emergency housing assistance, and T.W.'s progress with services was considered satisfactory at that time.

<u>The January 2015 Emergency Removal and other Developments</u>

In January 2015, T.W. tested positive for marijuana. T.W. was then referred for services, but failed to appear. A month later, in February 2015, the Division conducted an emergency removal of all three children, citing T.W.'s noncompliance with court-ordered services, and her marijuana relapse.

In March 2015, T.W. attended an intensive program focused on relapse prevention and anger management, although she discontinued that program a

6

month later due to funding problems. Meanwhile, T.W. continued to visit with the children.

In August 2015, the Division moved T.G., the second child, from his resource home to the residence of his paternal grandmother. By mid-September 2015, the mother was living with D.H., and was attending school and working.

<u>D.W.'s Birth in February 2016 and Additional Events</u>

After D.W. was born in February 2016, the Division removed him from the hospital on an emergency basis. Several days later, the trial court found no grounds for the removal and returned D.W. to the care of T.W. and D.H., who were then living with T.W.'s mother. A caseworker visited the house and found no safety issues and that T.W. and D.H. appeared to be bonded to their child and had a good relationship with one another.

An expert psychologist retained by the Division conducted a bonding evaluation between the mother and J.W. and T.G. in June 2016. The expert opined that T.W. was affectionate and supportive when interacting with T.G. and J.W., who both identified her as their mother. The expert concluded that T.G. and J.W. were attached to their mother, and would suffer harm if permanently removed from T.W. He consequently did not recommend termination at that time.

A-3437-17T3

T.W. received ongoing treatment and counseling, but also continued to test positive at times for marijuana use. She maintained a fairly steady record of visitations with T.G. and J.W.

In December 2016, the Division removed D.W. from T.W. and D.H., mainly due to T.W.'s continued marijuana usage and D.H.'s failure to comply with substance abuse testing. D.W. was placed with the resource parent who was already caring for J.W.

Thereafter, T.W. continued to visit the three youngest children, and she also continued her attempts with various services.

II.

The Division's Guardianship Complaint and Further Developments

The Division filed a complaint for guardianship of T.G. and J.W. seeking to terminate the rights of their parents in January 2017. The Division amended its complaint in August 2017 to include D.W. and to add his father D.H. as a co-defendant.

In the fall of 2017, an evaluation revealed that T.W. and D.H. had been staying with T.W.'s godmother temporarily in Pittsburgh. More evaluations ensued. Among other things, a psychiatrist retained by the Division recommended that T.W. be prescribed a mood stabilizer to prevent

A-3437-17T3

antidepressants from worsening her symptoms, but apparently the mood stabilizer was not provided to her.

The Two-Day Trial

The guardianship trial was conducted over two separate days in February 2018. The Division presented only two witnesses: (1) a caseworker who had been intermittently assigned to this family from October 2015 through June 2016, and again from August 2017 through February 2018; and (2) a psychologist who first evaluated the parents and the children in the fall of 2017. The Division also presented various records, including the admission, over J.K.'s objection, of reports of another expert retained by the Division. As we have already noted, the Law Guardian and the defendant parents did not present any witnesses.

The Trial Judge's Opinion

After sifting through the proofs, the trial judge issued a detailed thirty-page written opinion on March 14, 2018. The judge found that the Division failed to prove by clear and convincing evidence the necessary prongs of the statutory test for terminating parental rights.

Regarding T.W., the judge found that the Division proved prong one as to T.G., but not as to J.W. and D.W., and failed to prove prongs two, three, and

four with respect to T.G., J.W., and D.W.  Regarding J.K., the judge found the Division did not prove prong three, although it did prove as to him prongs one, two, and four.  Lastly, regarding D.H., the court determined that the Division did not prove any of the four prongs.

In her written opinion, the trial judge determined that the testimony of both of the Division witnesses was not credible in several critical respects. Among other things, the judge identified several deficiencies in the testifying psychologist's methodology, observing that he dissembled on the witness stand and that he had failed to review certain visitation records and other relevant materials.  The judge also found the caseworker's testimony unconvincing, noting, among other things, that she had trouble recalling certain important details.

The trial judge also expressed serious concerns about lengthy gaps in the Division's records for various time periods.  Those periods included: June 2014 to January 2015; December 2015 to February 2016; and December 2016 to March 2017.

In the course of her analysis, the judge particularly criticized the mismanagement of the mother's mental health treatment.  As the judge found:

> Most troublingly, however, is that in May 2017, [the Division's expert psychiatrist] diagnosed [T.W.] with

bipolar disorder and indicated that [T.W.] should be placed on both a mood-stabilizer and an anti-depressant and that an anti-depressant alone would worsen her symptoms of bipolar disorder. [The expert] recommended substance-abuse treatment and counseling services. Despite this clear recommendation, the Division made no effort to schedule her for psychiatric services and no effort to provide her with counseling. In fact, after referring [T.W.] for substance-abuse services in August [2017], the Division made no substantive contact with her until October 2017. Essentially the Division made no effort to assist [T.W.] with her mental illness, and in fact, had provided services – anti-depressants – earlier in the case that may have had an adverse impact on her mental health.

The Law Guardian's Appeal

After the trial court issued its final judgment denying termination, the Law Guardian filed the present appeal. Notably, the Division did not file an appeal but as a respondent did endorse the Law Guardian's request for reversal. We were advised at oral argument that, in the interim, the Division has filed another guardianship complaint in the Family Part, and that a trial in that new case is presently expected to begin in October 2019.

The Law Guardian maintains that the evidential record was sufficient to establish the four criteria for termination as to the mother and all three respective fathers. The Law Guardian contends that the trial court had a skewed impression of the witnesses and overlooked key contents of the documentary exhibits that

were unfavorable to the parents. The Law Guardian also argues the children are being unnecessarily delayed by the judge's decision in achieving a permanent outcome. The Division generally concurs in those arguments, although it maintains it is nonetheless prepared to prove its contentions at the upcoming trial.

III.

As the Law Guardian and the Division acknowledge, our case law prescribes an especially deferential scope of review in appeals taken from the Family Part's denial of the termination of parental rights. Our Supreme Court has repeatedly instructed, "[a]ppellate review of a trial court's decision to terminate parental rights is limited, and the trial court's factual findings 'should not be disturbed unless they are so wholly unsupportable as to result in a denial of justice.'" In re Guardianship of J.N.H., 172 N.J. 440, 472 (2002) (citations omitted). We "must defer to a trial judge's findings of fact if supported by adequate, substantial, and credible evidence in the record." N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007). We do so because the Family Part has "the superior ability to gauge the credibility of the witnesses who testify before it and because it possesses special expertise in matters related to the family." N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012).

12

Most importantly for the present appeal, even "greater deference is owed to a denial of an application to terminate parental rights than to a grant of an application because a termination of parental rights is final and cannot be revisited by the court." N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 553 (2014).

Applying these well-settled principles of "greater deference," we affirm the Family Part's decision, substantially for the reasons detailed in the trial judge's lengthy opinion. The judge reasonably concluded the Division had not met its heavy burden to prove the necessary prongs for termination by clear and convincing evidence.

With respect to the Division's testifying expert in particular, the judge cited several cogent reasons why that particular expert was unpersuasive. We shall not second-guess that assessment. It is well-settled that a fact-finder is "free to accept or reject in whole or in part the testimony of" any expert. Southbridge Park, Inc. v. Borough of Fort Lee, 201 N.J. Super. 91, 94 (App. Div. 1985). See also City of Long Branch v. Liu, 203 N.J. 464, 491-92 (2010). The fact-finder may do so "even if that testimony is unrebutted by any other [expert] evidence." State v. M.J.K., 369 N.J. Super. 532, 549 (App. Div. 2004).

13

The judge made it very clear why she did not find the Division's testifying expert credible on key points. Similarly, we will not set aside the judge's adverse credibility findings concerning the testifying caseworker, which likewise were well explained.

The Law Guardian argues that, regardless of the trial court's negative impressions of the testifying witnesses, the hearsay statements contained in the documentary exhibits were sufficient to prove the Division's case. We reject that argument. A judge presumably appreciates the nature of hearsay and will give it the weight, if any, it deserves. See N.J. Div. of Child Prot. & Permanency v. J.D., 447 N.J. Super. 337, 348-49 (App. Div. 2016) (observing that, "[w]hen objectionable hearsay is admitted . . . without objection, we presume that the fact-finder appreciates the potential weakness of such proofs, and takes that into account in weighing the evidence."). The hearsay statements in the documents do not compel reversal of the judge's overall fact-finding.

Having examined the trial transcripts and the documentary exhibits, we are unpersuaded the trial judge's decision lacks evidential support or that it is legally erroneous. The judge duly recognized the mother's problematic ongoing usage of marijuana and her imperfect compliance with services. But, on the flip side, the judge also recognized the mother's substantial efforts in visiting

14

frequently with the children, maintaining her relationship with them, and in advancing her own skills and education, including attaining a GED degree. Given those offsetting considerations, the judge reasonably rejected the Division's request to terminate her rights.

We also share the trial judge's concerns about the large time gaps in the Division's records, and also the Division's apparent failure to adequately manage the mother's mental health treatment.

Lastly, the trial judge articulated reasonable justifications for not terminating the parental rights of the fathers, given the short comings of the present record.

We therefore affirm the trial court's decision. We do so, of course, without prejudice to whatever evidence that may emerge at the forthcoming new trial, including events and developments that post-date the February 2018 trial.[3]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] In light of our affirmance, we need not address the policy arguments presented by defendants concerning the Division's approach with respect to parents such as T.W. with cognitive limitations, and other issues. We do so without precluding defendants from raising those policy concerns at the new trial, in this case, or in some other case, with appropriate expert or other evidential support.

A-3437-17T3