# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-5219-17T2
                A-5230-17T2

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

A.W. and P.G.C.,

      Defendants-Appellants.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF C.C.,

      a Minor.

_____

Submitted September 23, 2019 – Decided November 1, 2019

Before Judges Ostrer, Vernoia and Susswein.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Sussex County, Docket No. FG-19-0025-17.

Joseph E. Krakora, Public Defender, attorney for appellant P.G.C. (Louis W. Skinner, Designated Counsel, on the briefs).

Joseph E. Krakora, Public Defender, attorney for appellant A.W. (Ruth Ann Harrigan, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason Wade Rockwell, Assistant Attorney General, of counsel; Victoria Almeida Galinski, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Olivia Belfatto Crisp, Assistant Deputy Public Defender, on the brief).

PER CURIAM

In these consolidated cases, A.W. (Ashley) and P.G.C. (Patrick)[1] appeal from the Family Part's June 27, 2018 order terminating their parental rights to their son, C.C. (Craig), then just shy of seven years old. The order freed Craig for adoption by his foster parents, with whom Craig had lived for over two-and-a-half years.

Ashley and Patrick contend the Division of Child Protection and Permanency failed to establish any of the four prongs of the best interests test. See N.J.S.A. 30:4C-15.1(a). Ashley also contends the court committed plain

---

[1] For the reader's convenience, and to protect the child's privacy, we refer to the parties and child by pseudonymous first names.

error in considering hearsay embedded in various medical and treatment records; and her trial counsel was ineffective in failing to object. The Law Guardian joins the Division in supporting the judgment. We affirm substantially for the reasons set forth by Judge Michael C. Gaus in his comprehensive written opinion.

Judge Gaus found the Division proved, by clear and convincing evidence, all four prongs of N.J.S.A. 30:4C-15.1(a):

> (1) The child's safety, health or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;
>
> (3) The division has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and
>
> (4) Termination of parental rights will not do more harm than good.

The judge relied on the Division witnesses: Mark Singer, Ph.D., who conducted psychological and bonding evaluations of the parents, and a bonding evaluation of the foster parents; Preston Gagg, a Division caseworker who worked with defendants from late 2014 until late 2016; Division adoption and training supervisor Kelly Weymer, who worked with defendants after the guardianship complaint was filed in November 2016; and two forensic toxicologists, who testified about defendants' positive test results for substance abuse. Neither parent testified or presented witnesses. Patrick did not appear for trial. Ashley attended part of the trial, but appeared to be under the influence of drugs.

We find ample support for, and presume the reader's familiarity with, the detailed findings of fact in Judge Gaus's eighty-three page opinion. In summary, Judge Gaus credited the Division's witnesses and found that neither parent was capable of safely and effectively parenting Craig. The court recognized that Craig's autism presented a greater than usual need for consistent and stable parenting, to assure his emotional and cognitive development. The court described Craig's improved progress under the consistent care of his foster parents.

4

The court found that Ashley's incapacity arose from her persistent mental illness, and abuse of prescription and illicit drugs; her inability to consistently and successfully attend therapy or treatment for either, as offered by the Division; and her continual denial of the shortcomings that led to Craig's removal. She failed to provide a stable home; failed to assure Craig's regular attendance at school before the child was removed from the home; and was inconsistent with parenting time after he was removed.

Much like Ashley, Patrick's incapacity to parent arose from his abuse of alcohol and of drugs, often obtained from Ashley; his failure to consistently and successfully attend treatment as offered by the Division; and his minimization of his and Ashley's shortcomings. Patrick failed to assume responsibility for Craig's schooling and other needs when Ashley did not do so. He did not appreciate Craig's special needs. He attended parenting time inconsistently and was unable to provide a stable home for his son.

Relying on Dr. Singer's evaluations, Judge Gaus concluded that Craig had formed a strong emotional bond with his foster parents, whom he viewed as mother and father. If separated from his foster parents, Craig would suffer enduring harm that defendants could not mitigate. By contrast, the foster parents

could help Craig overcome any harm he would suffer from the loss of his attachment to defendants.

We exercise limited review of the trial court's decision. <u>In re Guardianship of J.N.H.</u>, 172 N.J. 440, 472 (2002). We defer to the trial court's fact-findings, and its exercise of expertise in family matters. <u>N.J. Div. of Youth & Family Servs. v. F.M.</u>, 211 N.J. 420, 448 (2012); <u>Cesare v. Cesare</u>, 154 N.J. 394, 411-13 (1998). We review legal issues de novo. <u>See</u> <u>Manalapan Realty, L.P. v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995).

"We will not disturb the family court's decision to terminate parental rights when there is substantial credible evidence in the record to support the court's findings." <u>N.J. Div. of Youth & Family Servs. v. E.P.</u>, 196 N.J. 88, 104 (2008). Defendants essentially challenge the factual basis for the court's determinations. However, after reviewing the record and applicable law in light of the arguments advanced on appeal, we discern no basis to disturb the court's findings, which were supported by substantial credible evidence.

As for prongs one and two – which are interrelated, <u>In re Guardianship of DMH</u>, 161 N.J. 365, 378-79 (1999) – defendants misplace reliance on the fact that Craig never suffered physical harm while in their care; he remained attached to his parents; and they interacted positively with them during visits. "Courts

6

need not wait to act until a child is actually irreparably impaired by parental inattention or neglect." Id. at 383. It is sufficient to prove the risk or danger of harm. N.J. Div. of Youth & Family Servs. v. A.G., 344 N.J. Super. 418, 440 (App. Div. 2001). "Serious and lasting emotional or psychological harm to children as the result of the action or inaction of their biological parents can constitute injury sufficient to authorize the termination of parental rights." In re Guardianship of K.L.F., 129 N.J. 32, 44 (1992). Judge Gaus found, based on substantial evidence in the record, that defendants' parental shortcomings – including their persistent substance abuse and her untreated mental illness – placed Craig at substantial risk of developmental harm.

Defendants minimize or excuse their failure to complete treatment programs, and insist they were able and willing to correct any harms to Craig. However, there was ample evidence to support the court's conclusion, based on defendants' inconsistent rehabilitation and treatment efforts, that they were unable or unwilling to provide Craig a safe and stable home; and separating Craig from his foster parents would cause him great emotional and psychological harm. See e.g. F.M., 211 N.J. at 450-51 (stating that untreated mental illness that threatens harm to the child may disqualify a parent from raising a child); K.H.O., 161 N.J. at 353 (stating "the second prong may be met

by indications of parental dereliction and irresponsibility, such as the parent's continued or recurrent drug abuse, the inability to provide a stable and protective home, [and] the withholding of parental attention and care"); A.G., 344 N.J. Super. at 438 (stating that blamelessness of a mentally ill parent "is not sufficient to tip the scale in [his or her] favor" if the illness impairs the ability to parent).

Regarding prong three, defendants also contend the Division failed to provide them with adequate or sufficiently tailored treatment programs. "The diligence of [the Division's] efforts on behalf of a parent is not measured by their success," DMH, 161 N.J. at 393, particularly where the lack of success results from a parent's "failure to cooperate or follow through." N.J. Div. of Youth & Family Servs. v. C.S., 367 N.J. Super. 76, 119 (App. Div. 2004). The record evidence demonstrates that the Division provided services in light of defendants' individual and sometimes changing needs.

Also lacking merit is Ashley's contention that the Division violated her rights under the Americans with Disabilities Act. The Division provided services to Ashley to assist her in overcoming her disabilities, or to enable her to parent in spite of them. The ADA does not excuse Ashley's lack of success, as that "would improperly elevate the rights of the parent above those of the child." A.G., 344 N.J. Super. at 442 (citations omitted). In addition, we discern

8

no error in the court's determination that the Division considered alternatives to termination. Craig's foster parents expressed their unequivocal commitment to adopt Craig as early as November 2016. The Division was not required to explore kinship legal guardianship (KLG) with them. See N.J. Div. of Youth & Family Servs. v. P.P., 180 N.J. 494, 512-13 (2004) (stating "when the permanency provided by adoption is available, kinship legal guardianship cannot be used as a defense to termination of parental rights").

We also discern no error in Judge Gaus's finding that the Division met prong four. The court recognized that Craig remained attached to his parents. Yet, the fourth prong does not require a "showing that no harm will befall the child as a result of the severing of biological ties." K.H.O., 161 N.J. at 355. Substantial evidence in the record, including Dr. Singer's opinion, supported the court's conclusion that termination of parental rights would not do more harm than good.

Finally, we reject Ashley's assertion of evidentiary error and ineffective assistance of counsel. She concedes that her records from Morristown Medical Center, and from two physicians, were admitted without objection. Even assuming for argument's sake a well-founded objection was available, in the absence of one, the court as fact-finder was entitled to give the evidence

appropriate evidential weight, recognizing whatever inherent weaknesses the hearsay may have. N.J. Div. of Child Protection and Permanency v. J.D., 447 N.J. Super. 337, 349 (App. Div. 2016). Under those circumstances, Ashley "faces an especially high hurdle . . . to establish that the admission of such evidence constitutes 'plain error.'" Ibid.

We are not convinced plain error is present here. Ashley has not demonstrated that admission of the hospital and physicians' records was "clearly capable of producing an unjust result." R. 2:10-2. There was ample evidence, outside of the hospital records, of Ashley's mental illness and pain medicine use, their negative impact on her parenting, and her failure to treat consistently. Without addressing Ashley's claim of deficient performance, her claim of ineffective assistance of counsel must also fail, as there was no reasonable probability that the result of the proceeding would have been different had Ashley's counsel interposed an objection. See N.J. Div. of Youth & Family Servs. v. B.R., 192 N.J. 301, 308-09 (2007) (adopting standard under Strickland v. Washington, 466 U.S. 668, 694 (1984), which requires a defendant to show deficient performance and "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

To the extent not addressed, defendants' remaining arguments lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION