# RECORD IMPOUNDED

### NOT FOR PUBLICATION WITHOUT THE
### APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0451-20

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

S.J. and N.L.,[1]

     Defendants,

and

D.P.,

     Defendant-Appellant.

_____

IN THE MATTER OF M.P.
and D.P., minors.

_____

Submitted November 1, 2021 – Decided November 19, 2021

---

[1] Pursuant to Rule 1:38-3(d)(10) to (12), we use initials and fictitious names to protect the confidentiality of the participants in these proceedings.

Before Judges Fasciale and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FN-07-0301-19.

Joseph E. Krakora, Public Defender, attorney for appellant (Catherine W. Wilkes, Assistant Deputy Public Defender, of counsel and on the briefs).

Andrew J. Bruck, Acting Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Amy Melissa Young, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Nancy P. Fratz, Assistant Deputy Public Defender, on the brief).

PER CURIAM

In this Title 9 proceeding, defendant D.P. (Dwayne) appeals from a September 25, 2019 order entered by a Family Part judge under N.J.S.A. 9:6-8.21(c)(4)(b),[2] finding he abused or neglected his girlfriend's son M.P. (Michael), born in 2017. The judge found Dwayne physically assaulted [the mother] while [she] was holding their child . . . in her arms . . . [and] was [seven]

---

[2] N.J.S.A. 9:6-8.21(c)(4)(b) provides an "abused or neglected child" includes children under the age of eighteen whose physical, mental, or emotional condition is in imminent danger of being impaired due to substantial risk of harm caused by a parent or guardian's failure to "exercise a minimum degree of care."

months pregnant.[3]  Defendant S.J. (Serena), the biological mother of Michael

and D.P. (Dante), born in 2019, had no findings made against her.  N.L. (Neil)

is Michael's biological father, and no findings were made against him.[4]  For the

reasons that follow, we affirm.

## I.

We derive the following facts from the record.  Serena has a long history

with the Division of Child Protection and Permanency (Division) dating back to

2004 after making sexual abuse allegations against her daughter J.R.'s father.

Those allegations were unsubstantiated.  In addition, Serena suffered from

mental health issues and unstable housing, leading to the removal of J.R. in

2005.  In 2006, Serena's other daughter, A.S., was released to her father's care

after she was born.  Eventually, Serena's parental rights were terminated as to

J.R. and A.S., who were adopted and are not involved in this appeal.

On July 3, 2018, the Division received a referral from the East Orange

Police Department (EOPD) that Dwayne punched Serena in the face after an

argument because she allegedly said "something bad" about his family.  Initially,

---

[3]  Dwayne is not Michael's biological father.  At the time central to this matter under review, Dwayne claims he was unaware of this fact.

[4]  S.J. and N.L. have not filed appeals.

A-0451-20

Serena told the EOPD that Michael, then seven months old, was in her arms when this occurred. "[E]xcessive blood [was found] on the bathroom floor," and medical personnel at East Orange General Hospital confirmed Serena's nose was fractured and required surgery. However, Serena reported to Division investigators that Michael "was sitting on the floor near the bed when the incident occurred." She also informed the representative that this was "the first physical altercation she had with [Dwayne]." At the time of the altercation, Serena was unemployed and financially dependent on Dwayne, even though she received various forms of government assistance. Dwayne's history is significant for domestic violence and simple assault.

A week later, Serena called the Division and claimed she lied to the police regarding her injuries and changed her story to claim "she was beat up by two [women]," and Dwayne was cheating on her with one of them. Serena explained she blamed the attack on Dwayne "because she felt as though it was his fault." In response, Dwayne denied any knowledge of the incident and "vehemently denied punching [Serena] in the face." Dwayne told the Division investigator he was working out of state in California at the time of the alleged incident; however, he did not produce his employer's travel logs to support his alibi and stated his attorney advised him "not to speak to anyone regarding any matters."

4

Although the two were in a relationship, they resided in separate homes. Dwayne claimed Serena had "called the woman and invited her to the house to fight." The Division concluded the allegations of physical abuse were "not established" but assessed the scored risk level as "high" before transferring the matter to the permanency unit to provide services.

On October 15, 2018, Serena underwent a psychological assessment with Dr. Mark Singer. He found Serena:

> has a history of engaging in intense and unstable relationships, acknowledged having had an altercation with some women and related this to jealousy involving the father of [Michael]. Of concern, [Serena] appears to have difficulty dealing with anger . . . [and] acknowledged that she has mood swings, consistent with [bipolar] [d]isorder. At present, she denied receiving any mental health treatment and indicated that medication may be helpful.
>
> . . . .
>
> [Serena] denied any domestic violence in the relationship (contrary to the record) and indicated that, "[she and Dwayne] are still together." She reported that they have been together for [two] years. As [Dwayne] was not evaluated, no comments may be made regarding his parenting capacity or any risk factors he may or may not present. The data does suggest that [Serena] has some difficulty trusting [Dwayne].

Dr. Singer recommended Serena "participate in individual therapy"; "be evaluated by a psychiatrist in order to assess any need for medication"; maintain

A-0451-20

sobriety and, "[i]f needed, an updated substance abuse evaluation should occur." Dr. Singer also recommended Dwyane "should be evaluated by a psychologist in order to have a more complete picture of the adult relationship and to identify any potential risk factors present." During a psychiatry evaluation, Serena claimed "she has been in [an] abusive relationship with [Dwyane]." She also stated there were "frequent episodes of abuse directed towards her and often times . . . in [the] presence of [Michael]." In April 2019, Dwayne was arrested by the Newark Police Department (NPD) for striking Serena over the head with a bottle while he was drunk.

On May 13, 2019, the Division received a referral from the NPD about another alleged altercation between Dwayne and Serena after he contacted her to apologize and return home with Michael. She told the NPD and the Division that after Dwayne picked her and Michel up after 1:00 a.m., an argument ensued while she was sitting in the passenger seat holding Michael on her lap. When Dwayne reached a stop sign, Serena jumped out of the car with Michael and ran for help, but Dwayne parked the car and followed them. Serena rang doorbells of local townhouses and screamed for help.

According to Serena, Dwayne "grabbed her and struck her in the face multiple times with a closed fist until she fell," and then kicked her in the

stomach and face. She was seven months pregnant with Dante at the time of this incident. According to Serena, Dwayne "did not stop hitting her until he heard the police sirens approaching." The NPD received two calls about the incident. The first caller reported a male "beating a woman with a child in her arms." The second caller reported a "woman . . . being beaten by a tall, skinny man driving a burgundy truck." Two officers pursued Dwayne, who ultimately crashed his truck at an intersection before fleeing on foot. Serena was admitted to the hospital for "fetal monitoring." During his interview with the Division, Dwayne denied having seen Serena since May 12, 2019, but "figured she signed herself in[to] the crisis [unit] because . . . .[she has a] habit of signing herself in . . . when things [are] not going her way."

Serena reported prior domestic violence with Dwayne while Michael was often in her arms. She informed the Division she intended to leave Dwayne and apply for a temporary restraining order (TRO) under the New Jersey Domestic Violence Statute, N.J.S.A. 2C:25-17 to -35, and pursue criminal charges against him.

On May 17, 2019, the Division filed a complaint for custody of Michael, which was granted that day.[5] On May 29, 2019, Serena testified she had declined a TRO, shelter, and domestic violence services because she wanted to co-parent with Dwayne. When Dante was born in June 2019, the Division amended its complaint to include custody of him as well, which was granted by the judge. Serena had not initiated service for substance abuse assessment or the Batterers Intervention Program (BIP). During a June 19, 2019 meeting between the Division, Dwayne, and Serena at the hospital, a representative informed Dwayne he had missed a previously scheduled substance abuse assessment, and Dwayne claimed he was unsure if the appointment was rescheduled. A new date was scheduled for him.

On September 25, 2019, the fact-finding trial took place. Neither Dwayne nor Serena appeared. The Division offered fifteen exhibits into evidence. The judge excluded only one exhibit—an uncertified police report. The other fourteen documents were admitted without objection or any limitation on hearsay statements contained therein. No witnesses or documentary evidence was presented on behalf of Dwayne or co-defendants.

---

[5]  A Dodd removal is an emergent removal of a minor without a court order pursuant to N.J.S.A. 9:6-8.21 to -8.82, known as the Dodd Act. N.J. Div. of Youth & Fam. Servs. v. P.W.R., 205 N.J. 17, 26 n.11 (2011).

In her oral decision, the judge found "it[] [was] more likely than not" that Dwayne had engaged in a physical altercation with Serena while she was holding Michael. The judge determined the Division established by a preponderance of the evidence that Dwayne had abused or neglected Michael because he placed the child at substantial risk of harm as defined by N.J.S.A. 9:6-8.21(c). On May 8, 2020, the judge granted the Division's motion to dismiss the matter as to Michael, who had been reunited with his father, Neil. Dante remained in the Division's custody, and on July 29, 2020, the judge terminated the litigation after the Division filed a complaint for termination of Dwayne and Serena's parental rights because neither parent had complied with services.

Dwayne now appeals. He primarily argues the record is insufficient to establish he engaged in a physical altercation with Serena that put Michael at a substantial risk of harm under N.J.S.A. 9:6-8.21(c)(4)(b). Dwayne also contends the judge erred by improperly basing her finding on inadmissible hearsay statements embedded in a police report and hospital records. He also claims the judge failed to make credibility findings under N.J.R.E. 808.

II.

Our standard of review of the Family Part's fact-finding determination is limited. On appeal from orders issued in Title 9 cases, we accord considerable

9

deference to the trial court's credibility determinations and findings of fact, as long as those findings "are supported by adequate, substantial, and credible evidence." N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 278-79 (2007) (internal quotation marks and citation omitted). "[I]f there is substantial credible evidence in the record to support the trial court's findings, we will not disturb those findings." N.J. Div. of Youth & Fam. Servs. v. L.L., 201 N.J. 210, 226 (2010); N.J.S.A. 9:6-8.46(b) (A court's finding of abuse or neglect in a Title 9 action must be proven by a preponderance of "competent, material, and relevant evidence"). "Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" A.J. v. R.J., 461 N.J. Super. 173, 180 (App. Div. 2019) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)).

However, "if the trial court's conclusions are 'clearly mistaken or wide of the mark[,]' an appellate court must intervene to ensure the fairness of the proceeding." L.L., 201 N.J. at 227-28 (alteration in original) (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)). We also owe no deference to the trial court's legal conclusions, which we review de novo. State v. Smith, 212 N.J. 365, 387 (2012) (citing State v. Handy, 206 N.J. 39, 44 (2011)).

A-0451-20

Title 9 cases are fact-sensitive, and the court should "base its findings on the totality of circumstances." N.J. Div. of Youth & Fam. Servs. v. V.T., 423 N.J. Super. 320, 329-30 (App. Div. 2011) (citing N.J. Div. of Youth & Fam. Servs. v. C.H., 414 N.J. Super. 472, 481 (App. Div. 2010)). Notably, the Title 9 proof standard is less stringent than in guardianship cases for the termination of parental rights, which instead must be proven by clear and convincing evidence. See N.J.S.A. 30:4C-15.1(a).

N.J.S.A. 9:6-8.21(c) defines various circumstances that can comprise the abuse or neglect of a child. Among other things, the statute specifically covers:

> a child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian, as herein defined, to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the court.
>
> [N.J.S.A. 9:6-8.21(c)(4)(b) (emphasis added).]

Our Supreme Court has noted, "[t]he law's paramount concern is the safety of the children, and not the culpability of parental conduct." N.J. Dep't. of Child. & Fams., Div. of Youth & Fam. Servs. v. A.L., 213 N.J. 1, 18 (2013) (internal quotations and citations omitted). "The focus in abuse and neglect matters . . .

11

is on promptly protecting a child who has suffered harm or faces imminent danger." Ibid. (citing N.J.S.A. 9:6-8.21(c)(4)).

Further, our courts have recognized that "[p]redictions as to probable future conduct can only be based upon past performance." C.H., 414 N.J. Super. at 482 (quoting Div. of Youth & Fam. Servs. v. R.M., 347 N.J. Super. 478, 493 (App. Div. 1978)). "We cannot conceive that the Legislature intended to guarantee to parents at least one chance to kill or abuse each child." N.J. Div. of Youth & Fam. Servs. v. F.H., 389 N.J. Super. 576, 616 (App. Div. 2007) (quoting J. v. M., 157 N.J. Super. 478 493 (App. Div. 1978)). Nonetheless, our Supreme Court has cautioned that where, as here, an "allegation of child neglect in which the conduct of the parent or caretaker does not cause actual harm is fact-sensitive and must be resolved on a case-by-case basis." Dep't of Child. & Fams. v. E.D.-O., 223 N.J. 166, 192 (2015).

Applying our limited scope of review and these standards here, we are satisfied there was competent, credible evidence in the record to support the judge's finding that Dwayne abused or neglected Michael. We add the following comments.

For the first time on appeal, Dwayne argues: (1) the judge erred in relying on inadmissible hearsay statements; and (2) there was insufficient evidence to

12

conclude he abused or neglected Michael. Dwayne does not contend that the reports were improperly admitted into evidence, including 600 pages of uncertified medical records.[6] Rather, Dwayne asserts Serena's out-of-court statements made to the police, medical personnel, and Division representatives constitute inadmissible hearsay not subject to an exception. We disagree.

Generally, we do not consider issues not raised before the Family Part "unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest." N.J. Div. of Youth & Fam. Servs. v. B.H., 391 N.J. Super. 322, 343 (App. Div. 2007) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)). "[A]n appellate court will not reverse an error not brought to the attention of the trial court unless the appellant shows . . . it was 'plain error,' that is, 'error clearly capable of producing an unjust result.'" Ibid. (citing R. 2:10–2). "[A]n appellant faces an especially high hurdle in an appeal . . . to establish that the admission of [unopposed] evidence constitutes 'plain error' . . . ." N.J. Div. of Child Prot. & Perm. v. J.D., 447 N.J. Super. 337, 349-50 (App. Div. 2016) (citations omitted).

---

[6] Although the Newark Beth Israel Medical Center medical records did not include an authenticating certification, at trial counsel for the Division represented to the judge that the hospital records each contained certifications and the medical records were admitted into evidence by agreement.

"Hearsay is not admissible except as provided by [the New Jersey Rules of Evidence] or by other law."  N.J.R.E. 802; see also N.J.R.E. 801(c) (defining "hearsay" as "a statement that . . . the declarant does not make while testifying at the current trial or hearing . . . and . . . [is] offer[ed] in evidence to prove the truth of the matter asserted in the statement").  N.J.S.A. 9:6–8.46(a)(3) provides Division records may be admitted as evidence "'of any condition, act, transaction, occurrence or event relating to a child in an abuse or neglect proceeding . . . [as] proof of that condition, act, transaction, occurrence or event' if it meets the prerequisites for admission of a business record."  J.D., 447 N.J. Super. at 347 (alterations in original).

The New Jersey Rules of Evidence provides a business record may be admitted if it "was made in the regular course of business and it was in the regular practice of that business to make such writing or other record."  N.J.R.E. 803(c)(6); see also R. 5:12-4(d) (stating the Division "shall be permitted to submit into evidence . . . reports by staff personnel or professional consultants [and the] [c]onclusions drawn from the facts stated therein shall be treated as prima facie evidence, subject to rebuttal").  "[H]earsay embedded in such records[,] [however,] must satisfy a separate hearsay exception."  J.D., 447 N.J. Super. at 347-48 (citing N.J. Div. of Child Prot. & Perm. v. R.W., 438 N.J.

14

Super. 462, 466–67 (App. Div. 2014); <u>N.J. Div. of Youth & Fam. Servs. v. M.G.</u>, 427 N.J. Super. 154, 173–74 (App. Div. 2012)).

A "[d]efendant's own statements are admissible as statements of a party-opponent." <u>Id.</u> at 348 (citing N.J.R.E. 803(b)(1)). An allegedly abused or neglected child's statements are generally "admissible as those of a child victim." <u>Ibid.</u> (citing N.J.S.A. 9:6–8.46(a)(4)). The statements of a third party, such as a police officer, however, "must satisfy a separate exception." <u>Ibid.</u>

A "belated challenge to the admission of [evidence] . . . is barred by the invited error doctrine." <u>Ibid.</u> (citing <u>N.J. Div. of Youth & Fam. Servs. v. M.C. III</u>, 201 N.J. 328, 340-41 (2010)). "The doctrine of invited error operates to bar a disappointed litigant from arguing on appeal that an adverse decision below was the product of error, when that party urged the lower court to adopt the proposition now alleged to be error." <u>M.C. III</u>, 201 N.J. at 340 (quoting <u>Brett v. Great Am. Recreation</u>, 144 N.J. 479, 503 (1996)). Where a litigant does not object to the admission of relevant evidence, the litigant effectively "consent[s] to the admission of the [evidence]." <u>See</u> <u>id.</u> at 341. Therefore, "depriv[ing] the [litigant's adversary] of the opportunity to overcome [the] objection[,] . . . . [to] take[] steps to satisfy any evidentiary requirements [thereafter] needed for the

15

admission of the [evidence objected to,] or [to] present[] [alternative evidence] in place of the [evidence objected to]." Ibid.

"[H]earsay[,] subject to a well-founded objection[,] is generally evidential if no objection is made." J.D., 447 N.J. Super. at 348-49 (citing State v. Ingenito, 87 N.J. 204, 224 n.1 (1981) (Schreiber, J., concurring)). We have recognized:

> [a] party is free to waive objection to the admission of hearsay evidence. In some cases, parties may have no reason to question the accuracy of such hearsay, or may make "a strategic decision to try the case based on the documents, instead of possibly facing a witness's direct testimony."
>
> [Id. at 349 (quoting N.J. Div. of Child Prot. & Perm. v. N.T., 445 N.J. Super. 478, 503 (App. Div. 2016)).]

It is generally not the Family Part's "responsibility, particularly in a bench trial with represented parties, to intervene with a well-founded hearsay objection, whenever counsel choose not to raise one of their own." Ibid. "When objectionable hearsay is admitted in a bench trial without objection, we [must] presume that the fact-finder appreciates the potential weakness of such proofs, and takes that into account in weighing the evidence." Ibid. (citations omitted). "[A]n appellant faces an especially high hurdle in an appeal . . . to establish that

16

the admission of such evidence constitutes 'plain error.' . . . ." Id. at 349 (citing R. 2:10-2).

First, Dwayne's counsel consented to the admittance of the evidence. A party who fails to object to the admittance of evidence, effectively consents to its admittance. In M.C. III, where "the one document that defendant objected to . . . was not admitted into evidence," the Court held "[t]he record [wa]s clear that defendant consented to the admission of the [other] relevant documents." 201 N.J. at 341. The Court found "no error in the trial court's reliance on defense counsel's indication that he did not object to the admission of the various documents." Id. at 342. Similarly, in J.D., where "defendant through his counsel agreed to admission into evidence of the documents" and "the Division relied on defendant's attorney's consent to the admission into evidence of the documents," the appellate court held the Family Part did not commit "plain error by considering the embedded hearsay in [the] documents admitted into evidence." 447 N.J. Super. at 348, 350.

Where "objectionable hearsay is admitted in a bench trial without objection, we presume that the fact-finder appreciates the potential weakness of such proofs and takes that into account in weighing the evidence." Id. at 349 (citations omitted). We will not "weigh the evidence, assess the credibility of

17

witnesses, or make conclusions about the evidence." Slutsky v. Slutsky, 451 N.J. Super. 332, 344 (App. Div. 2017) (quoting Mountain Hill, LLC v. Twp. of Middletown, 399 N.J. Super. 486, 498 (App. Div. 2008)). Such findings are left to the deference of the Family Part, especially "when the evidence is largely testimonial and involves questions of credibility." A.J. v. R.J., 461 N.J. Super. 173, 180 (App. Div. 2019) (quoting Cesare, 154 N.J. at 411-12).

In the matter under review, defense counsel objected to only one document—the police report—which was not admitted into evidence. And, Dwayne's counsel consented to the admission of the other relevant documents. J.D., 447 N.J. Super. at 348. Because the documents were admitted into evidence unredacted and without any objection in whole or in part, the judge was allowed to consider the embedded hearsay within those documents. Id. at 348, 350. We cannot overlook the fact that Dwayne's counsel had Serena's medical records admitted into evidence and thereby had the strategic advantage of arguing she suffered from mental illness.

As such, the Family Part did not commit plain error by considering Serena's statements included in the Division, police, and medical reports. Thus, we will not disturb the judge's factual findings unless such findings were "manifestly unsupported by or inconsistent with the competent, relevant[,] and

reasonably credible evidence as to offend the interest of justice." Slutsky, 451 N.J. Super. at 344 (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). Here, we discern no error.

Dwayne's argument is further weakened by the fact that he relies on some of the now contested evidence in his argument on appeal. Dwayne's counsel asserted that the information that the Division is relying on in this case to substantiate my client is coming from [Serena] who I believe the evidence indicates . . . is not completely credible. Specifically, . . . the evidence shows that she has mental health issues." We note that Dwayne specifically referenced the medical records indicating substance abuse issues when Dante was born and the recanted allegations made during the first Division referral on July 3, 2019. We are convinced the judge did not rely on inadmissible hearsay evidence to make her findings.

Second, even if Serena's out-of-court statements are not barred by the invited error doctrine, the statements still qualify as a hearsay exception.[7] Under

---

[7]  Although other exceptions may apply, including N.J.R.E. 803(c)(4), statements for purposes of medical diagnosis or treatment, the most vital statements to Dwayne's appeal are those where Serena identified Dwayne as her assailant and claims previous incidences of domestic violence, which she claimed occurred often with Michael in her arms. Such statements may qualify as a hearsay exception under N.J.R.E. 803(c)(25), statements made against interest.

N.J.R.E. 803(c)(25), a hearsay statement is admissible if the statement, "at the time of its making[,] [is] so far contrary to the declarant's [interest] . . . that a reasonable person in [the] declarant's position would not have made the statement unless the person believed it to be true." The declarant "need not be a party" in the case for the statement to be admissible. Rowe v. Bell & Gossett Co., 239 N.J. 531, 559 (2019) (citations omitted).

A parent's out-of-court statement reporting domestic violence in the home to the Division are against his or her interest. N.T., 445 N.J. Super. at 498-99. In N.T., the defendant appealed the Family Part's finding that he had abused or neglected his stepson by allowing him to witness domestic violence perpetrated against co-defendant, defendant's wife, and stepson's biological mother. Id. at 486. We held the co-defendant's statements contained in reports and evaluations qualified under the hearsay exception for statements against interest because "the children could be removed." Id. at 498 (citing N.J.R.E. 803(c)(25)).

Here, Serena has a well-documented history with the Division. Two of her children had already been removed from her custody due to Serena's mental health issues and unstable housing. In speaking with the Division representative following the alleged physical assault on May 13, 2019, Serena confirmed she

had been "made aware the Division would be contacted as a result of the family violence."

When the Division asked if Serena was "aware how the Division can help ensure [Michael]'s safety, [Serena] stated, 'Taking him from me.'" Consequently, her statements to the police, hospital staff, and Division were against her interests because "a reasonable person in [Serena]'s position would not have made the statement unless the person believed it to be true," N.J.R.E. 803(c)(25), because the statements ran the risk "the children could be removed," N.T., 445 N.J. Super. at 498. We conclude Dwayne's argument that the judge relied on inadmissible hearsay unpersuasive.

For the reasons stated above, the judge did not abuse her discretion in admitting and considering Serena's "hearsay" statements included in plaintiff's testimony and admitted reports because Dwayne consented to the inclusion of the statements by not objecting to their admission at trial. Moreover, the statements otherwise qualify as a hearsay exception. Therefore, we may reject Dwayne's argument and conclude the judge's findings are supported by adequate, substantial, and credible evidence in the record.

Next, Dwayne argues the judge's finding that he abused and neglected Michael was based on a misunderstanding of applicable legal principles because the judge "did not have sufficient, competent, admissible evidence." Specifically, Dwayne argues N.J.S.A. 9:6-8.21(c)(4) requires: (1) "psychological" evidence Michael "was emotionally or mentally harmed by witnessing the alleged incident"; (2) "trustworthy" evidence Dwayne "failed to exercise a minimum degree of care"; and (3) "particularized evidence" of "a substantial or ongoing risk of harm" by a preponderance of the evidence.

First, psychological evidence of emotional or mental harm is not required. A child need not be harmed to be abused or neglected. The Legislature's intent in enacting Title 9 was "to assure that the lives of innocent children are immediately safeguarded." N.J.S.A. 9:6-8.8(a). In deciding Title 9 cases, the Family Part judge must be mindful that the "safety of the children" is the "paramount concern and the best interests of the child shall be a primary consideration." Ibid. "The focus in abuse and neglect matters, thus, is on promptly protecting a child who has suffered harm or faces imminent danger." A.L., 213 N.J. at 18 (citing N.J.S.A. 9:6-8.21(c)(4)) (emphasis added). In determining whether a child has been abused or neglected, a court must consider

"the totality of the circumstances." V.T., 423 N.J. Super. at 329-30 (citing C.H., 414 N.J. Super. at 481).

Title 9's definition of an "abused or neglected child" includes:

> child[ren] whose physical, mental, or emotional condition . . . is in imminent danger of becoming impaired as the result of the failure of [a] parent . . . to exercise a minimum degree of care . . . in providing the child with proper supervision . . . by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof . . . .
>
> [N.J.S.A. 9:6-8.21(c)(4).]

By the express wording of the statute, a child who has not yet been impaired but is in imminent danger of being impaired may be considered an "abused or neglected child" under the statute. A.L., 213 N.J. at 23 (determining that "a finding of abuse and neglect can be based on proof of imminent danger and substantial risk of harm" (citing N.J.S.A. 9:6-8.21(c)(4))). A court "need not wait to act until a child is actually irreparably impaired by parental inattention or neglect." In re Guardianship of D.M.H., 161 N.J. 365, 383 (1999) (citing N.J. Div. of Youth & Fam. Servs. v. A.W., 103 N.J. 591, 616 n1.4 (1986)). Hence, the Division must merely prove, based on the totality of the circumstances, that it's more than likely than not there exists a substantial risk of harm.

Second, the "trustworthiness" of the evidence is left to the deference of the Family Part judge, especially "when the evidence is largely testimonial and involves questions of credibility." A.J., 461 N.J. Super. at 180 (quoting Cesare, 154 N.J. at 411-12). A guardian's actions need not be intentional to be abusive or neglectful. "To find abuse or neglect, the parent must 'fail[] . . . to exercise a minimum degree of care.'" E.D.-O., 223 N.J. at 179 (alterations in original) (quoting N.J.S.A. 9:6-8.21(c)(4)(b)). This requires "conduct that is grossly negligent because it is willful or wanton . . . but not necessarily intentional." Ibid. (quoting G.S. v. Dep't of Hum. Servs., 157 N.J. 161, 178 (1999)). "Willful or wanton" conduct is "done with the knowledge that injury is likely to, or probably will, result." Ibid. (quoting G.S., 157 N.J. at 178).

A parent or guardian is liable for the foreseeable consequences of his or her actions, the dangerous risks "an ordinary reasonable person would understand . . . [the] situation poses," regardless of his or her intentions. G.S., 157 N.J. at 179 (citations omitted). "[W]here a parent or guardian acts in a grossly negligent or reckless manner, that deviation from the standard of care may support an inference that the child is subject to future danger." N.J. Div. of Youth & Fam. Servs. v. T.B., 207 N.J. 294, 307 (2011). Here, the Division was required to show, based on the totality of the circumstances, that it was more

than likely than not Dwayne's conduct on May 13, 2019, created a foreseeable consequence of risk of harm to Michael, which an ordinary reasonable person would understand.

Third, evidence of a substantial or ongoing risk of "harm is fact-sensitive and must be resolved on a case-by-case basis." E.D.-O., 223 N.J. at 192. Courts undertaking this analysis "must avoid resort[ing] to categorical conclusions." Id. at 180 (citing T.B., 207 N.J. at 309). "Instead of filling in missing information . . . judges must engage in a fact-sensitive analysis turning on 'particularized evidence.'" R.W., 438 N.J. Super. at 471 (quoting A.L., 213 N.J. at 28). The judge "must weigh the entire relationship [and particular history] between the parties and must specifically set forth their findings of fact in that regard." Cesare, 154 N.J. at 405. "[I]n making their determinations, [the Family Part] can consider evidence of a defendant's prior abusive acts regardless of whether those acts have been the subject of a domestic violence adjudication." Ibid. (citations omitted). The Division must merely show, based on the totality of the circumstances, that it's more than likely than not domestic violence is an ongoing risk of harm to a child.

Here, during the fact-finding trial, the judge admitted all of the Division's evidence, save an uncertified police report, and considered testimony from a

Division representative, who the judge found to have "good recollection and was consistent with the other evidence."  "[H]er demeanor on the stand led th[e] [judge] to find her testimony to be credible."  Moreover, the judge appropriately found that Dwayne placed Michael at sufficient risk of harm based on the totality of the circumstances and the child was abused and neglected.  Dwayne produced no evidence to the contrary.

To the extent not addressed, Dwayne's remaining arguments lack sufficient merit to warrant discussion.  Rule 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0451-20