# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0791-24

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

     Plaintiff-Respondent,

v.

E.K.A.,

     Defendant-Appellant,

and

R.P.,

     Defendant.

_____

IN THE MATTER OF J.M.,
R.P., and R.P., minors.

_____

     Submitted January 6, 2026 – Decided March 27, 2026

     Before Judges Sumners and Augostini.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FN-14-0031-24.

Jennifer Sellitti, Public Defender, attorney for appellant (Adrienne Kalosieh, Assistant Deputy Public Defender, of counsel and on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Donna Arons, Assistant Attorney General, of counsel; Michelle McBrian, Deputy Attorney General, on the brief).

Jennifer N. Sellitti, Public Defender, Law Guardian, attorney for minors J.M., R.P., and R.P. (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Neha Gogate, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant E.K.A. appeals from the trial court's June 28, 2024 order that she abused or neglected J.M. (Jan),[1] R.P. (Rita), and R.P. (Reese) pursuant to N.J.S.A. 9:6-8.21(c)(4). Because we conclude the judge's fact-finding decision was not supported by sufficient credible evidence in the record and is inconsistent with the applicable law, we reverse.

---

[1] We use fictitious names to preserve the privacy and confidentiality of the parents and children. R. 1:38-3(d)(12).

A-0791-24

I.

Defendant is the biological mother of Jan born in 2014, Rita born in 2018, and Reese born in 2019. R.P. (Roger)[2] is the biological father of Rita and Reese; the biological father of Jan is unknown.

Defendant was arrested on August 15, 2023, after she allegedly "led police on a vehicle pursuit which spanned four or five towns," "ran over someone's foot," and collided with two vehicles at a traffic light. Defendant first "str[uck] a police officer from a road stop [in Parsippany and] then spe[]d from the scene." Boonton Detective Brian G. Walinski attempted to stop her in a Walgreen's parking lot, but she "accelerated and proceeded south on Myrtle Ave[nue]," which prompted the detective to activate his lights and sirens and pursue her. Defendant then collided with two uninvolved vehicles at a traffic light on Wootton Street. The detective and other officers pursued her and unsuccessfully attempted to stop her at Taco Bell, but she "proceeded over the curb and front lawn of Taco Bell, continuing west on R[ou]t[e] 46." Eventually, defendant stopped her car because she had run out of fuel and "jumped into the back seat with her three children."

---

[2] Roger did not appeal the abuse determination.

A-0791-24

Defendant was arrested for eluding the police, N.J.S.A. 2C:29-2B, and was issued multiple motor vehicle citations for fictitious plates, N.J.S.A. 39:3-33; leaving scene of accident involving property damage, N.J.S.A. 39:4-129(b); driving when license suspended, N.J.S.A. 39:3-40; failure to report accident, N.J.S.A. 39:4-130; and reckless driving, N.J.S.A. 39:4-96.

Following defendant's arrest, the New Jersey Division of Child Protection and Permanency (Division) conducted an emergency removal of the children on August 15, 2023, and placed them in a resource home. On August 17, the trial court upheld the removal as necessary and appropriate because no caregiver was available for the children at the time of defendant's arrest. The children's maternal grandmother assumed care of the children on August 18. On November 2, defendant consented to Division provided services and waived her right to a Title 30 trial.

The trial court conducted a Title 9 fact-finding trial on June 7, 2024. Division intake worker Stephanie Santana testified for the Division about its investigation of the August 15, 2023 incident. Santana referred to the police report, stating:

> [Defendant] was borderline psychotic and she was being chased through four to five towns. It was reported that she ran over someone's foot. And when the police was following her, she would not stop. At

some point, the police ended up breaking in the window to the car and that's how they were able to speak to [defendant].

Santana testified that defendant's mother reported that defendant had "mental health concerns" and "must have had a breaking point" during the pursuit. The ten-year-old Jan informed Santana "that her mother may have had a headache at some point. She didn't know if her mother took medication." Jan described that "the police [were] following them . . . [b]ut . . . couldn't remember details as to what happened because she was sleeping the entire time." Santana did not obtain any information from Jan's younger siblings, Rita or Reese.

Santana also testified about her interview with defendant:

> So [defendant] denied . . . the allegations of being chased by the police. However, she did say that she did not stop for the police because she was not going to be a victim of police brutality. And then she did report to me that the officers were pointing guns at her. And she asked me to see the cameras of when she ran over someone as well.
>
> . . . .
>
> She denied running over anyone's foot.

According to the Division's records, defendant "reported that at no point did the police turn on their sirens and pull her over; they were just following her." Defendant described that she was in the back of the car with her children

5

when the police tried to break the car window. Additionally, she stated that her "children w[e]re in the car when the police pointed the guns at her . . . [and] that the children were crying and scared." Defendant denied any mental health diagnoses or taking any medication. As result of its investigation, the Division established defendant for neglect, risk of harm, and inadequate supervision towards Jan, Rita, and Reese.

The trial court denied defendant's hearsay objections regarding the admissibility of the police report. The Division contended that it relied on the police reports in assessing the "impact to the children" and "why the children were removed." In response, defendant argued that the police reports should not be admitted without testimony from the police officers. Defendant noted that the police report failed to identify defendant as the driver or the officers involved in apprehending defendant:

> Your Honor, I cannot even imagine how many layers of hearsay we have in this case. We have somebody writing that something was fictitious. We don't have any identification. We don't have the people who were [there] on the . . . the day of the incident involved in this. And this is . . . I don't know, [y]our Honor.

After considering the parties' arguments, the trial court admitted the police report under the business records exception "only as prima facie evidence, which . . . is rebuttable" but noted that "if the only evidence is this police chase . . . it

6

would be a deprivation of the confrontation clause to make a finding of any kind without the other side's ability to cross-examine." The court also reasoned that authentication of the report was not required because the Division provided a certification from the Documents Director at the Boonton Police Department and that it would accept counsel's written summations as to the admissibility of the police reports. There was no eyewitness testimony confirming the allegations of defendant's driving conduct as set forth in the police report. And because the eluding charge and motor vehicle summonses had not been resolved at the time of the fact-finding hearing, their disposition did not support the trial court's ruling.

On June 28, 2024, the trial court issued a written order finding by a preponderance of the evidence that defendant abused or neglected her children pursuant to N.J.S.A. 9:6-8.21(c)(4). Thereafter, on October 3, 2024, the court issued a written order terminating litigation because the "children remain in the home" and "conditions had been remediated" with defendant. The court ordered that defendant retain legal custody of Jan, Rita, and Reese.

Defendant appealed.

## II.

Our review of a trial court's finding of abuse or neglect is guided by well-established principles. "[W]e accord substantial deference and defer to the factual findings of the Family Part if they are sustained by 'adequate, substantial, and credible evidence' in the record." N.J. Div. of Child Prot. & Permanency v. N.B., 452 N.J. Super. 513, 521 (App. Div. 2017) (quoting N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 552 (2014)). "Indeed, we recognize that '[b]ecause of the family courts' special jurisdiction and expertise in family matters, [we] should accord deference to family court factfinding.'" N.J. Div. of Youth & Fam. Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (first alteration in original) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)).

However, "if the trial court's conclusions are 'clearly mistaken or wide of the mark[,]' an appellate court must intervene to ensure the fairness of the proceeding." N.J. Div. of Youth & Fam. Servs. v. L.L., 201 N.J. 210, 226-27 (2010) (alteration in original) (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)). Additionally, we owe no deference to the trial court's legal conclusions, which we review de novo. Amzler v. Amzler, 463 N.J. Super. 187, 197 (App. Div. 2020); N.J. Div. of Child Prot. & Permanency v. D.C.A., 474 N.J. Super. 11, 24 (App. Div. 2022).

A-0791-24

"The Division bears the burden of proof at a fact-finding hearing and must prove present or future harm to a child by a preponderance of the evidence." N.J. Div. of Youth & Fam. Servs. v. A.L., 213 N.J. 1, 22 (2013) (citing N.J.S.A. 9:6-8.46(b)). The Division must sustain that burden "through the admission of 'competent, material and relevant evidence.'" N.J. Div. of Youth & Fam. Servs. v. P.W.R., 205 N.J. 17, 32 (2011) (quoting N.J.S.A. 9:6-8.46(b)). In making a determination of abuse and neglect, the trial court should base its decision on the totality of the circumstances. N.J. Div. of Youth & Fam. Servs. v. V.T., 423 N.J. Super. 320, 329 (App. Div. 2011). In an abuse or neglect proceeding, due process warrants some level of confrontation right, as long as the court "prevent[s] further victimization or traumatization of young children" who are witnesses. N.J. Div. of Child Prot. & Permanency v. C.W., 435 N.J. Super. 130, 142 (App. Div. 2014).

A parent subjects his or her child to abuse or neglect when:

> [the child's] physical, mental, or emotional condition has been impaired or is in imminent danger of being impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care (a) in supplying the child with adequate food, clothing, shelter, education, medical or surgical care though financially able to do so or though offered financial or other reasonable means to do so, or (b) in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted

harm, or substantial risk thereof, including the infliction of excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid to the court.

[N.J.S.A. 9:6-8:21(c)(4).]

To sustain an abuse determination under subsection (a) or (b), the Division must show that: "(1) the child's physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired; and (2) the impairment or imminent impairment results from the parent's failure to exercise a minimum degree of care." N.J. Div. of Child Prot. & Permanency v. A.B., 231 N.J. 354, 369 (2017). "In the absence of actual harm, a finding of abuse and neglect can be based on proof of imminent danger and substantial risk of harm." A.L., 213 N.J. at 23. A court "need not wait to act until a child is actually irreparably impaired by parental inattention or neglect." In re Guardianship of D.M.H., 161 N.J. 365, 383 (1999). Imminent means "threatening to occur immediately; dangerously impending . . . [or] about to take place" and "imminently dangerous" is "reasonably certain to place life and limb in peril." N.J. Div. of Child Prot. & Permanency v. B.P., 257 N.J. 361, 376 (2024) (quoting Black's Law Dictionary 494, 898 (11th ed. 2019)).

For the second factor, mere negligence does not trigger the statute. Dep't of Child. & Fams. v. T.B., 207 N.J. 294, 305-07 (2011); G.S. v. Dep't of Human

Servs., 157 N.J. 161, 177-78 (1999). "Rather, the failure to exercise a minimum degree of care 'refers to conduct that is grossly or wantonly negligent, but not necessarily intentional.'" N.J. Div. of Child Prot. & Permanency v. S.G., 448 N.J. Super. 135, 144 (App. Div. 2016) (quoting T.B., 207 N.J. at 305). Willful or wanton negligence "implies that a person has acted with reckless disregard for the safety of others," is "done with the knowledge that injury is likely to, or probably will, result," and "can apply to situations ranging from slight inadvertence to malicious purpose to inflict injury." G.S., 157 N.J. at 178-79 (internal quotations omitted); see Fielder v. Stonack, 141 N.J. 101, 124 (1995). If an act is intentional, then "whether the actor actually recognizes the highly dangerous character of her conduct is irrelevant" and "[k]nowledge will [automatically] be imputed to the actor." G.S., 157 N.J. at 178. Overall, a court's assessment of a parent failing to exercise a minimum degree of care is "a difficult one," T.B., 207 N.J. at 309, and must be "'analyzed in light of the dangers and risks associated with the situation,'" id. at 306 (quoting G.S., 157 N.J. at 181-82).

As for hearsay involving reports and records, N.J.S.A. 9:6-8.46(a)(3) allows admission of Division records "of any condition, act, transaction, occurrence or event relating to a child in an abuse or neglect proceeding . . . [as]

11

proof of that condition, act, transaction, occurrence or event" if it satisfies the business records exception to hearsay.  N.J. Div. of Child Prot. & Permanency v. J.D., 447 N.J. Super. 337, 347 (App. Div. 2016) (alteration in original). "However, hearsay embedded in such records must satisfy a separate hearsay exception." Ibid.  Moreover, the business records exception doesn't require that the custodian or qualified witness testify prior to the admission of the report; the foundation may be established through certification of the report.  Gunter v. Fischer Scientific American, 193 N.J. Super. 688, 692 (App. Div. 1984); see M.C. III, 201 N.J. at 346.

## III.

On appeal, defendant contends that the trial court:  (1) lacked sufficient evidence to find that she abused or neglected her children and (2) erred in relying on the police reports as corroborating evidence of abuse because the reports were inadmissible hearsay.

The Division only relied upon the testimony of caseworker Santana, who described her interview with defendant and the police report's assertion. Defendant merely told Santana that "she did not stop for the police because she was not going to be a victim of police brutality."  Defendant did not tell Santana how she was driving to avoid the police and denied running over a police

A-0791-24

officer's foot. It was Santana's reference to the police report that provided the damning details that defendant was driving erratically through multiple towns, with her children in the backseat, causing the police to draw their guns on her and her children.

The trial court misapplied its discretion in admitting the police reports as evidence of defendant's driving conduct over her objection. See State v. Prall, 231 N.J. 567, 580 (2018) (quoting Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010)) (holding a trial court's evidentiary rulings are viewed "under the abuse of discretion standard because, from its genesis, the decision to admit or exclude evidence is one firmly entrusted to the court's discretion."). Although much of the police report is admissible under the business records exception under N.J.R.E. 803(c)(6), the trial court did not determine how the embedded statements satisfied a separate hearsay exception. See J.D., 447 N.J. Super. at 347 ("hearsay embedded in [police] records must satisfy a separate hearsay exception"). By admitting the police report as corroborating evidence of abuse or neglect, defendant was not afforded the opportunity to confront her accusers, the police. Under the circumstances, the police or someone else who witnessed defendant's driving should have testified. Because there was no admissible evidence establishing that defendant acted with

willful or wanton negligence and with reckless disregard for the safety of her children, to support a finding of abuse or neglect, we are constrained to reverse as the admission of the police report was "clearly capable of producing an unjust result." R. 2:10-2.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Hanley*

Clerk of the Appellate Division